## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PASQUINELLI HOMEBUILDING, LLC, | ) | Case No. 11-14829 |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Jacqueline P. Cox |
| | ) | |
| In re: | ) | Case No. 11-25203 |
| PASQUINELLI FINANCIAL, LLC, | ) | |
| | ) | |
| In re: | ) | Case No. 11-25205 |
| PASQUINELLI MANAGEMENT, LLC | ) | |
| | ) | |
| In re: | ) | Case No. 11-25207 |
| PASQUINELLI HOMES, LLC, | ) | |
| | ) | |
| In re: | ) | Case No. 11-25210 |
| PORTRAIT HOMES INDIANA, LLC, | ) | |
| | ) | |
| In re: | ) | Case No. 11-25211 |
| PORTRAIT HOMES NORTH CAROLINA, LLC | ) | |
| | ) | |
| In re: | ) | Case No. 11-25213 |
| PORTRAIT HOMES TEXAS, LLC, | ) | |
| | ) | |
| Debtors. | ) | |

## INTERIM ORDER AUTHORIZING INTERCOMPANY BORROWING AMONG CERTAIN DEBTORS' ESTATES, SCHEDULING A FINAL HEARING AND GRANTING RELATED RELIEF

THIS MATTER having come before this Court upon the motion (the "Motion") by Alex D. Moglia, not individually, but solely in his capacity as Chapter 7 trustee (the "Trustee") of the bankruptcy estates of Pasquinelli Homebuilding, LLC ("Homebuilding"; Case No. 11-14829), Pasquinelli Financial, LLC ("Financial"; Case No. 11-25203), Pasquinelli Management, LLC ("Management"; Case No. 11-25205), Pasquinelli Homes, LLC ("Homes"; Case No. 11-25207), Portrait Homes Indiana, LLC ("Portrait Homes Indiana"; Case No. 11-25210), Portrait Homes North Carolina, LLC ("Portrait Homes North Carolina"; Case No. 11-25211) and Portrait Homes Texas, LLC ("Portrait Homes Texas"; Case No. 11-25213) (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363 and 364(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of interim (this "Interim Order") and final orders authorizing intercompany borrowing among certain of the Debtors as described in the Motion; the Court having considered the Motion and the evidence submitted at the hearing on the Motion held on January 12, 2012 (the "Interim Hearing") and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and the local rules of this Court; due and proper notice of the Motion and the Hearing having been given to all parties entitled to notice thereof; the Interim Hearing having been held and concluded; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the liquidation of the Debtors' assets; and it further appearing that the Trustee is unable to obtain adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code or to obtain adequate credit secured under sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code from sources other than the Lenders on terms

more favorable than the terms of the Trustee Loan Obligations; and all objections, if any, to the

entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after

due deliberation and consideration, and for good and sufficient cause appearing therefore;[1]

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   **Election of Trustee.**   On May 26, 2011, Alex Moglia was elected to serve as the

permanent chapter 7 trustee of debtor Homebuilding on May 26, 2011.   Subsequently, on June

15, 2011, the 2nd Tier Debtors each filed voluntary petitions for relief under chapter 7 of

Bankruptcy Code.   On June 17, 2011, the United States Trustee for the Northern District of

Illinois appointed Alex Moglia as interim trustee for the remaining Debtors.   The Court entered

an order directing the joint administration of the Debtors' bankruptcy cases on July 12, 2011.

B.   **Jurisdiction and Venue**.   The Court has jurisdiction over this Motion pursuant to

28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue

is proper in this district pursuant to 28 U.S.C. § 1409.

C.   **Notice.**   The Interim Hearing was held pursuant to the authorization of

Bankruptcy Rule 4001 and Local Rule 4001-2.   Notice of the Interim Hearing and the relief

requested in the Motion has been provided by the Trustee to those parties who have requested

notice in these cases and who receive electronic notice via the Court's CM/ECF system and to

the Office of the United States Trustee.   Under the circumstances, such notice of the Interim

Hearing and the relief requested in the Motion is due and sufficient notice and complies with

sections 102(1) and 364(c) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c) and

4001(d) and the local rules of this Court.

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

D.      **Current Funds.**  Under the prior administration of Allan DeMars as interim chapter 7 trustee of Homebuilding, various deposit accounts were collected and orders were entered by this Court authorizing the use of such funds to pay final compensation to Mr. DeMars and his counsel, Jenner & Block LLP and Arnstein & Lehr LLP, and to pay retainers to financial advisors and counsel to the Trustee, without allocation of the source.  As a result of the foregoing, the Trustee currently has on deposit the sum of $815,531.13.43[2] in his trustee account at Bank of New York Mellon (the "Funds").

E.      **Difficulty Allocating Ownership to Funds Needed For Administration.**  The ~~Trustee represents that the~~ Trustee's investigation to date, including information turned over by the interim chapter 7 trustee for Homebuilding, indicates that it may be difficult to trace the origin of the Funds.  Prior to the commencement of these chapter 7 cases, the Debtors and their non-debtor affiliates operated a complex cash management system whereby borrowings from lenders and proceeds of sale of improved real estate were transferred to various concentration accounts nominally under the control of Financial and Management, then transferred to Homebuilding and Tier 2 and Tier 3 entities in order to pay their payables.  The incomplete state of documentation and of the recollection of Debtors' representatives at the meetings of creditors conducted to date suggests that the accounting scheme of distributions and intercompany loans may not track reality of the transfers.  Hence, the following allocation of Funds among Debtors and non-debtors is suspect, but the best available: Homebuilding: $100,852.46 (includes interim payment from Stewart Title); Management: $266,794.21 (includes trust account of Debtor's counsel); Financial: $249,937.63; Portrait Homes – Chicago: $0.00; Portrait Texas: $2,550.04; Portrait North Carolina: $10,130.00; and aggregated among Non-debtor entities including Pasquinelli

---

[2] Of this amount, $185,131.79 and possibly more may be for non-debtor entities (depending on further investigation).

Mortgage, Portrait Homes – Summerwood and Portrait Homes – South Carolina: $185,131.79 or more.

F.     **Findings Regarding the Trustee Loan Obligations.**

(i)     **Need for Trustee Loan Obligations.**  The Trustee has incurred and expects to incur additional administrative expenses entitled to priority under § 503(b)(2) of the Bankruptcy Code in these cases which must be funded, including for the examination of records, the filing of schedules and the prosecution of valuable litigation claims.  Since there are no ongoing operations of the Debtors to generate income, the Trustee has concluded that intercompany borrowing is the best means to fund ongoing administrative expenses and to protect the rights of creditors of the estates or entities from which the borrowing will occur.

The Trustee, on behalf of the Borrowers, has an immediate and critical need to incur the Trustee Loan Obligations (defined below) in order to pay the professionals to these estates.  Absent present payment of their fees, the Trustee cannot presume that his professionals will continue to provide the valuable services needed to recover valuable estate assets that may be available for distribution to creditors.

(ii)     **Anticipated Borrowing.**  The Borrowers must borrow in order to pay administrative expenses sought by the Trustee's professionals pursuant to fee applications filed or expected to be filed with the Court.  Such professionals' fee applications have attempted to allocate their time among the Debtors' estates and, if and when allowed by the Court, will be paid first from the assets of the estate for which the allowed fees were rendered or expenses incurred.  However, the cash shortfall in the estates of the Debtors listed below (the "Borrowers") requires borrowing by them from other estates (the

5

"Lenders") in the following amounts (the "Trustee Loan Obligations"), based on the compensation and reimbursement requested by such applications:

| Borrower | Trustee Loan Obligation | Lender |
|---|---|---|
| Pasquinelli Homebuilding, LLC | $87,208.37 | Pasquinelli Management, LLC |
| Pasquinelli Homebuilding, LLC | $87,208.38 | Pasquinelli Financial, LLC |
| Portrait Homes Indiana, LLC | $5,069.00 | Pasquinelli Management, LLC |
| **Total** | **$179,485.75** | |

(iii)   **No Credit Is Available on More Favorable Terms**.   The Trustee is unable to obtain adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code. The Trustee is unable to obtain adequate credit secured under sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code from sources other than the Lenders on terms more favorable than the terms of the Trustee Loan Obligations.   The only source of credit available to the Trustee are the Trustee Loan Obligations.

(iv)   **The Trustee Loan Obligations Are Fair and Reasonable**.  The terms of the Trustee Loan Obligations are fair and reasonable, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

G.   **Documentation of Trustee Loan Obligations**.   Each Borrower estate will execute a grid note payable to a Lender estate to evidence its Trustee Loan Obligations in the form attached to the Motion as Exhibit 2 with the amount of the borrowing filled in (the "Notes").

H.   **Maximum Trustee Loan Obligations**.  Subject to the availability of funds in a Lender estate, the Borrower estates may borrow no more than $179,485.75 during the term of this Interim Order.

I.   **Use of Proceeds of the Trustee Loan Obligations**.  Proceeds of the Trustee Loan Obligations shall be used, in each case, in a manner consistent with the terms and conditions of this Interim Order to fund the administrative expenses of the estates incurred in the ordinary course in accordance with the Bankruptcy Code, including (1) professional fees and expenses as allowed by the Court and (2) $7,500 for the expenses of Diamond & McCarthy during the Interim Period.

J.   **Payment of Interest and Expenses**.  The Borrowers are authorized to pay, and the Lenders are entitled to receive, interest on the principal amount of the Trustee Loan Obligations at the rate of 5.25%.  Such interest will accrue and be payable with principal upon the maturity of the Notes.

K.   **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the Trustee Loan Obligations and this Interim Order are fair, reasonable, and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and consideration.  The Trustee Loan Obligations and this Interim Order were negotiated in good faith and at arms' length between the Borrowers and the Lenders.  The use of the proceeds to be extended under the Trustee Loan Obligations will be extended in good faith and for valid business purposes and uses, as a consequence of which each of the Lender estates is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

L.    **Relief Essential; Best Interest**.  The relief requested in the Motion is necessary, essential, and appropriate for the reasons stated in the Motion.  It is in the best interest of the Debtors' estates to be allowed to incur the Trustee Loan Obligations contemplated by this Interim Order.

**NOW, THEREFORE**, on the Motion of the Trustee and the record before this Court with respect to the Motion, and good and sufficient cause appearing for the entry of the relief requested in the Motion,

**IT IS HEREBY ORDERED** that:

1.    **Motion Granted**.  The Motion is granted in accordance with the terms and conditions set forth in this Interim Order.[3]

2.    **Documentation of Trustee Loan Obligations.**

(a)    **Approval of Borrowings and Notes**.  The Trustee, on behalf of each Borrower, is expressly and immediately authorized and empowered to incur and perform the Trustee Loan Obligations in accordance with, and subject to, the terms of this Interim Order and to execute and deliver Notes from each Borrower to each Lender to evidence the Trustee Loan Obligations from time to time outstanding in accordance with this Interim Order.  Each Borrower is hereby authorized to perform all acts, and subject to the provisions of this Interim Order, to pay the principal and interest described in this Interim Order and the Notes as such become due, which amounts shall not otherwise be subject to approval of this Court.  This Interim Order and the Notes represent valid and binding obligations of each Borrower enforceable against such Borrower in accordance with their terms.

---

[3] To the extent that there is a conflict between the Motion and the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

(b)    **Interest and Fees.**  Each Borrower is hereby authorized and directed to pay interest to each Lender estate on the outstanding principal balance of the Trustee Loan Obligations pursuant to this Interim Order at the annual rate of 5.25% per annum.  Interest shall be calculated on the basis of a 360-day year for the actual number of days elapsed.

(c)    **Application of Proceeds**.  The proceeds of the Trustee Loan Obligations shall be used, in each case, in a manner consistent with the terms and conditions of this Interim Order and the Notes solely for (i) payment of costs of administration of these chapter 7 cases and (ii) payment of interest under this Interim Order and the Notes.

(d)    **Enforceable Obligations**.  This Interim Order and the Notes shall constitute and evidence the valid and binding obligations of each Borrower, which obligations shall be enforceable against such Borrower's respective bankruptcy estate in accordance with their terms.

(e)    **Superpriority Administrative Claim Status**.  Subject to the Carve-Out (defined below), all Trustee Loan Obligations shall be an allowed superpriority administrative expense claim (the "Trustee Superpriority Claim") with priority under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d) and 726(b) of the Bankruptcy Code.  Payments made by a Borrower in accordance with this Interim Order shall not be subject to disgorgement in the event of an insufficiency of assets to repay the Trustee Loan Obligations.

3.    **Authorization to Use Proceeds of Trustee Loan Obligations**.  Pursuant to the terms and conditions of this Interim Order and the Notes, each Borrower is authorized to use the advances under this Interim Order and the Notes during the period commencing immediately after the entry of this Interim Order.

4.    **Commitment Termination Date**.  The Trustee Loan Obligations will be payable on demand or, if demand is not made, on the 5th anniversary of the entry of this Interim Order or any other order approving the Trustee Loan Obligations.

5.    **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of a Borrower or of any other person or affect the right of the Lenders to object to the allowance and payment of such fees and expenses.

6.    **Collateral Rights**.  Except for third-party financing approved by the Trustee and the Court, no order shall be entered in these proceedings, or in any successor case, that permits any lien or security interest or any costs or expenses of administration with priority senior to, or *pari passu* with, the Trustee Superpriority Claim of the Trustee Loan Obligations of such Borrower estate.

7.    **Carve-Out.**  Notwithstanding anything to the contrary contained in the Notes or this Interim Order: (a) any amount that becomes due pursuant to 28 U.S.C. § 1930(a)(6), (b) the amount of any claim for amounts payable pursuant to 28 U.S.C. § 1930(a)(6), (c) allowed fees and expenses for counsel to the Trustee (not to exceed $1 million for any individual Borrower estate and $3 million in the aggregate by all Borrower estates), (d) allowed compensation of the Trustee (not to exceed the limits set forth in section 326 of the Bankruptcy Code), and (e) allowed fees for professionals retained by the Trustee other than counsel (collectively, the "Carve-Out") shall not be subject to the Trustee Superpriority Claim granted to the Lender

10

estates under sections 364(c)(1), 503(b) and 507(b) as and for a carve-out for the professional fees and expenses of counsel for the Trustee. The Carve-Out under clauses (c), (d) and (e) shall be reduced dollar-for-dollar by the cumulative amount of compensation and expense reimbursement that is paid to the professionals referred to in such clause by advances made under this Interim Order.

8.    **Events of Default**.

(a)    The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order:

1)    the failure to repay the Trustee Loan Obligations when due;

2)    the entry by this Court or another court of competent jurisdiction of an order disallowing any of the Trustee Loan Obligations or determining that any provision of this Interim Order or the Notes is not enforceable according to its terms;

3)    the entry by this Court of an order determining that the Trustee Superpriority Claim is invalid or does not have the priority and extent provided in this Interim Order;

4)    the filing of any application for financing that violates the terms of this Interim Order;

5)    the failure of any Borrower to comply in all material respects with each and all of the terms and conditions of this Interim Order; or

6)    the occurrence of a breach, Default or Event of Default under the Notes (and the expiration of any period of cure, grace or notice, if any, set forth therein relating to such default).

9.      **Rights and Remedies Upon Event of Default**.  If an Event of Default shall occur and not be cured by the Borrower after the Lender gives five (5) business days' notice thereof to the Borrower, the United States Trustee and each party who has requested notice of all proceedings in these cases, subject to the Carve-Out, the Lender may seek an order from this Court to enforce the Note in question.

10.      **Other Rights and Obligations.**

(a)      **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**.  Each Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the Trustee Loan Obligations and the Trustee Superpriority Claim contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, each Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the priority authorized or created hereby (including the Trustee Superpriority Claim).  Notwithstanding any such modification, amendment or vacation, any claim granted to each Lender hereunder arising prior to the effective date of such modification, amendment or vacation of the Trustee Superpriority Claim granted to each Lender shall be governed in all respects by the original provisions of this Interim Order, and such Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the Trustee Superpriority Claim granted herein, with respect to any such claim.  Since the loans made pursuant to this Interim Order and the Notes, and the consents and accommodations granted by each Lender, are

made in reliance on this Interim Order, the obligations owed to such Lender (including the

Trustee Superpriority Claim) prior to the effective date of any stay, modification or vacation of

this Interim Order cannot, as a result of the dismissal of these chapter 7 cases, be subordinated,

lose its superpriority administrative expense claim status, or be deprived of the benefit of the

status of the claims granted to such Lender under this Interim Order and/or the Notes.

(b)   **Proofs of Claim**.  Each Lender may, but is not required to file proofs of

claim in these cases.

(c)   **Binding Effect**.  The provisions of this Interim Order shall be binding

upon and inure to the benefit of each Lender, and its respective successors and assigns (including

any trustee or other fiduciary hereinafter appointed as a legal representative with respect to the

property of the estates thereof).

(d)   **No Waiver**.  The failure of a Lender to seek relief or otherwise exercise

his rights and remedies under the Notes, this Interim Order or otherwise, as applicable, shall not

constitute a waiver of any of such Lender's rights hereunder, thereunder, or otherwise.

Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does

not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Trustee

under the Bankruptcy Code or under non-bankruptcy law, including without limitation (i) the

rights of such Lender to request dismissal of these cases or (ii) any of the rights, claims or

privileges (whether legal, equitable or otherwise) of such Lender.

(e)   **No Third-Party Rights**.  Except as explicitly provided for herein, this

Interim Order does not create any rights for the benefit of any third party, creditor, equity holder

or any direct, indirect, or incidental beneficiary.

(f)    **Amendment**.  The Trustee on behalf of a Borrower and Lender may amend or waive any provision of the Trustee Loan Obligations, provided that such amendment or waiver, in the judgment of the Trustee, is either non-prejudicial to the rights of third parties or is not material; provided, however, that any amendment or waiver that impacts the rights of a Lender must in fact be non-prejudicial or not material, and the Trustee shall be promptly notified of any and all amendments and waivers.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed on behalf of the Lender (after having obtained the approval of the Lender as provided in this Interim Order and the Notes) and approved by the Court.

(g)    **Survival of Interim Order**.  The provisions of this Interim Order and any actions taken pursuant hereto shall be effective on the entry hereof ("Effective Date") and shall survive entry of any order which may be entered (i) dismissing these cases, (ii) withdrawing the reference of these cases from this Court, or (iii) providing for abstention from handling or retaining of jurisdiction of these cases in this Court.  The terms and provisions of this Interim Order, including the Trustee Superpriority Claim granted pursuant to this Interim Order, and the Notes, shall continue in full force and effect notwithstanding the entry of such order, and the Trustee Superpriority Claim shall maintain its priority as provided by this Interim Order until all the Trustee Loan Obligations have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the Trustee Loan Obligations or this Interim Order which survive such discharge by their terms).

(h)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the Notes and of this Interim Order, the provisions of this Interim Order shall govern and control.

(i)   **Enforceability**. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.

(j)   **Objections Overruled**.   All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

(k)   **Waiver of the Ten (10) Day Stay Under Bankruptcy Rule 6004(h)**. The ten (10) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Interim Order.

11.   **Final Hearing**.

(a)   The Final Hearing to consider entry of the Final Order and final approval of the Trustee Loan Obligations is scheduled for ~~February~~ 23, 2012 at 10:30 prevailing Central time at the United States Bankruptcy Court for the Northern District of Illinois. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

(b)   Within two (2) business days following the entry of this Interim Order, the Trustee shall file and serve electronically, via the Court's CM/ECF system, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, and proposed Final Order and the Motion, on: (a) all parties who receive notice in this case via the Court's CM/ECF system; and (b) the Office of the United States Trustee. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than ~~February~~ 21, 2012 which objections shall be served so that the same are received on or

before such date by: (a) counsel for the Trustee, Schiff Hardin LLP, 233 South Wacker Drive, Suite 6600, Chicago, IL 60606, Attn: J. Mark Fisher and Jason M. Torf, Fax: (312) 258-5700; and (b) the U.S. Trustee, and shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, in each case to allow actual receipt of the foregoing no later than February 21, 2012 at 4:00 p.m. prevailing Central time. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under section 364(e) of the Bankruptcy Code and the rights of any Lender to terminate any Trustee Loan Obligations if such Final Order is not acceptable to it.  In the event this Court modifies any of the provisions of this Interim Order or the Trustee Loan Obligations, if any, following such further hearing, such modifications shall not affect the rights and priorities of the Lenders pursuant to this Interim Order with respect to the Trustee Superpriority Claims, and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

(c)    At least six (6) business days prior to the Final Hearing, the Trustee shall file and serve electronically, via the Court's CM/ECF system, a budget reflecting his expected use of funds to be advanced pursuant to the Final Order on the same parties to which notice is sent pursuant to paragraph 11(b) above.  Any budget filed and served by the Trustee in accordance with this paragraph may be modified, as the Trustee deems appropriate, by filing a revised budget via the Court's CM/ECF system and serving it on the same parties and in the same manner as stated above.

12.    **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Enter:    *Jacqueline P. Cox*

*J. Cox*    2/9/12
_____
Honorable Jacqueline P. Cox
United States Bankruptcy Judge

CH2\10733449.8